Dana J. Oliver, Esq. (SBN: 291082)
dana@danaoliverlaw.com
OLIVER LAW CENTER, INC.
8780 19th Street #559
Rancho Cucamonga, CA 91701
Telephone:  (855)384-3262
Facsimile:  (888)570-2021

Attorney for Plaintiff and Putative Class

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JENNIFER SCHOFIELD, individually and on behalf of all others similarly situated,<br><br>*Plaintiff*,<br><br>v.<br><br>ALBERTSONS SAFEWAY LLC<br><br>*Defendant.* | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

## CLASS ACTION COMPLAINT

1. Jennifer Schofield ("Plaintiff") brings this class action against Albertsons Safeway LLC ("Defendant") under the Telephone Consumer Protection Act ("TCPA"), 47 U.S.C. § 227.

2. To promote its goods and services, Defendant engages in unsolicited text messaging and continues to text message consumers after they have opted out of Defendant's solicitations. Defendant also engages in telemarketing without the required policies and procedures, and training of its personnel engaged in telemarketing.

3. Through this action, Plaintiff seeks injunctive relief to halt Defendant's unlawful conduct, which has resulted in the invasion of privacy, harassment, aggravation, and disruption of the daily life of Plaintiff and the Class members.  Plaintiff also seeks statutory damages on behalf

of Plaintiff and members of the Class, and any other available legal or equitable remedies.

**PARTIES**

4. Plaintiff is a natural person, a citizen of California, where she resides and intends to remain, and she resides in this District.

5. Defendant is a limited liability company conducting business across the country, including in this District.

**JURISDICTION AND VENUE**

6. This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

7. This Court has personal jurisdiction over Defendant because Defendant regularly engages in telemarketing directed at consumers in this District, including sending unsolicited text messages to consumers located in this District and deriving business from these activities.

**INTRODUCTION**

8. "Telemarketing calls are intrusive. A great many people object to these calls, which interfere with their lives, tie up their phone lines, and cause confusion and disruption on phone records. Faced with growing public criticism of abusive telephone marketing practices, Congress enacted the Telephone Consumer Protection Act of 1991. Pub. L. No. 102-243, 105 Stat. 2394 (1991) (codified at 47 U.S.C. § 227). As Congress explained, the law was a response to Americans 'outraged over the proliferation of intrusive, nuisance calls to their homes from telemarketers' *id.* § 2(6), and sought to strike a balance between '[i]ndividuals' privacy rights, public safety interests, and commercial freedoms' *id.* § 2(9).

9. "The law opted for a consumer-driven process that would allow objecting individuals to prevent unwanted calls to their homes. The result of the telemarketing regulations was the national Do-Not-Call registry. *See* 47 C.F.R. § 64.1200(c)(2). Within the federal government's web of indecipherable acronyms and byzantine programs, the Do-Not-Call registry stands out as a model of clarity. It means what it says. If a person wishes to no longer receive telephone solicitations, he can add his number to the list. The TCPA then restricts the telephone solicitations that can be made to that number. *See id.*; 16 C.F.R. § 310.4(b)(iii)(B) ('It is an abusive telemarketing act or practice and a violation of this Rule for a telemarketer to . . . initiat[e] any outbound telephone call to a person when . . . [t]hat person's telephone number is on the "do-not-call" registry, maintained by the Commission.'). Private suits can seek either monetary or injunctive relief. *Id.* This private cause of action is a straightforward provision designed to achieve a straightforward result. Congress enacted the law to protect against invasions of privacy that were harming people. The law empowers each person to protect his own personal rights. Violations of the law are clear, as is the remedy. Put simply, the TCPA affords relief to those persons who, despite efforts to avoid it, have suffered an intrusion upon their domestic peace." *Krakauer v. Dish Network, L.L.C.*, 925 F.3d 643, 649-50 (4th Cir. 2019).

**PLAINTIFF'S ALLEGATIONS**

10. Plaintiff is, and at all times mentioned herein was, a "person" as defined by 47 U.S.C. § 153(39).

11. Plaintiff's cellular telephone number is 925-231-XXXX.

12. Plaintiff personally listed her telephone number on the National Do-Not-Call Registry on August 14, 2006, and has not removed it from the Registry since that time.

CLASS ACTION COMPLAINT
-3-

13. Plaintiff uses this telephone number for personal, residential, and household purposes.

14. Plaintiff's telephone number is not associated with any business, nor does Plaintiff use the number for business purposes.

15. In or about October 2024, Plaintiff began receiving text message solicitations to her cellular telephone, 925-231-XXXX, from Defendant.

16. These text messages came from short code 48687.

17. The messages solicited Defendant's offers and promotions.

18. For example, on November 24, 2024, at 2:19 p.m., Plaintiff received the following text message solicitation from Defendant on her cellular phone, 925-231-XXXX:

> Safeway: Create your health profile & we'll say thanks with a $10 grocery coupon! Terms apply. https://safeway.onelink.me/kO9I/aoxr17w4 Txt STOP to end

19. On November 24, 2024, Plaintiff replied with the instruction to STOP as advised in Defendant's solicitation text message.

20. On November 24, 2024, at 4:45 p.m., Defendant sent a text message confirming that it had received Plaintiff's stop instruction and further stating that Plaintiff would not receive any further texts from Defendant.

21. This text message came from short code 27640.

22. That message reads as follows:

> Albertsons Companies Inc. confirmation: You've opted out and will not receive Offers&Promo text messages. For help call 1-877-505-4040. Msg&data rates may apply.

23. Despite confirming Plaintiff's stop request and stating that Plaintiff would not receive any further text messages, Plaintiff received the following text message solicitation on November 25, 2024, at 7:00 p.m. from Defendant:

> There's still time to gobble up savings at Safeway
> Safeway: Save big on the perfect turkey before the family arrives. Check out your deals HERE https://safeway.comsmsurl.co/HkeEvl4 Txt STOP to send, HELP for help. Msg&DataRatesMayApply

24. After receiving this text message solicitation, on November 25, 2024, Plaintiff again texted STOP as instructed in Defendant's text

25. On November 25, 2025, Plaintiff again received the following opt out confirmation:

> Albertsons Companies Inc. confirmation: You've opted out and will not receive Offers&Promo text messages. For help call 1-877-505-4040. Msg&data rates may apply.

26. Despite these opt out requests and confirmations, Plaintiff continued to receive text message solicitations from Defendant.

27. In fact, Plaintiff texted STOP instructions at least eight (8) times.

28. After her initial STOP instruction, Plaintiff received at least fourteen (14) text message solicitations from Defendant. As examples, Plaintiff attaches screenshots from her phone as **Exhibit A**.

29. Plaintiff did not provide prior express consent to receive text message solicitations on her cellular phone from, or on behalf of, Defendant.

30. Plaintiff was annoyed and harassed by the repeated spam solicitation text messages from Defendant and Defendant's noncompliance with her stop requests.

31. As demonstrated by the above messages, the purpose of Defendant's text messages was to solicit the sale of consumer goods and/or services.

32. As demonstrated by the above messages, the purpose of Defendant's text messages was to advertise, promote, and/or market Defendant's property, goods, and/or services.

CLASS ACTION COMPLAINT
-5-

33. As demonstrated by the above messages, Defendant does not honor consumer requests to opt-out of text message solicitations.

34. Indeed, Plaintiff attempted to opt-out of Defendant's text message solicitations by responding, but Defendant continued to text message Plaintiff.

35. This was even after Defendant had confirmed Plaintiff's opt-out request.

36. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant has not instituted procedures for maintaining a list of persons who request not to receive text messages from Defendant. The precise details regarding its lack of requisite policies and procedures are solely within Defendant's knowledge and control.

37. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not provide training to its personnel engaged in telemarketing. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

38. Defendant's refusal to honor Plaintiff's opt-out request demonstrates that Defendant does not maintain a standalone do-not-call list. The precise details regarding its lack of training are solely within Defendant's knowledge and control.

39. Defendant did not maintain the required procedures for handling and processing opt-out requests prior to the initiation of the violative text messages it sent to Plaintiff as reflected by the fact that Plaintiff made opt-out requests and that those requests were never processed; they were ignored by Defendant and its employees and Defendant continued to send text messages.

40. Upon information and belief, Defendant has access to outbound transmission reports for all text messages sent advertising/promoting its services and goods. These reports show the dates, times, target telephone numbers, and content of each message sent to Plaintiff

and Class members. Defendant also has access to text message logs showing Plaintiff's and Class members' inbound opt-out requests.

41. Plaintiff and Class Members revoked any consent they may have previously provided to Defendant by replying with a "STOP" or similar opt-out instruction in response to Defendant's text messages.

42. Defendant's text messages caused Plaintiff and Class members harm, including statutory damages, inconvenience, invasion of privacy, aggravation, annoyance, and violation of their statutory privacy rights.

## CLASS ALLEGATIONS

43. Plaintiff brings this case as a class action pursuant to Fed. R. Civ. P. 23, on behalf of Plaintiff and all others similarly situated.

44. Plaintiff brings this case on behalf of the Classes defined as follows:

> <u>IDNC Class</u>: All persons within the United States who, within the four years prior to the filing of this lawsuit through the date of class certification, received two or more text messages within any 12-month period, from or on behalf of Defendant, regarding Defendant's goods or services, to said person's residential cellular telephone number, *after* communicating to Defendant that they did not wish to receive text messages by replying to the messages with a "stop" or similar opt-out instruction.
>
> <u>DNC CLASS</u>: All persons in the United States who, within the four years prior to the filing of this action through the date of class certification, (1) were sent more than one text message within any 12-month period; (2) where the person's telephone number had been listed on the National Do Not Call Registry for at least thirty days; (3) regarding Defendant's property, goods, and/or services; (4) to said person's residential cellular telephone number; (5) after making a request to Defendant to not receive further text messages by replying with a "stop" or similar opt-out instruction in response to Defendant's text message(s).

45. Plaintiff reserves the right to modify the Class definitions as warranted as facts are learned in further investigation and discovery.

CLASS ACTION COMPLAINT
-7-

46. Defendant and its employees or agents are excluded from the Classes.

**NUMEROSITY**

47. Plaintiff does not know the exact number of members of the Class but is informed and believes that there are at least 50 individuals that fall within the class definitions given Defendant's use of robotexts to solicit consumers and refusal to honor stop requests. The members of the Classes, therefore, are believed to be so numerous that joinder of all members is impracticable.

48. The exact number and identities of the members of the Classes are unknown at this time and can only be ascertained through discovery. Identification of Class members is a matter capable of ministerial determination from Defendant's call records.

**COMMON QUESTIONS OF LAW AND FACT**

49. There are numerous questions of law and fact common to members of the Classes which predominate over any questions affecting only individual members of the Classes. Among the questions of law and fact common to the members of the Classes are:

- Whether Defendant sent text messages to Plaintiff and Class members;
- Whether Defendant continued to send text message solicitations after opt-out requests;
- Whether Defendant failed to honor Plaintiff's and Class members' opt-out requests;
- Whether Defendant implemented the requisite training of personnel under section 64.1200;
- Whether Defendant maintains an internal do-not-call list and instructs its employees on how to use the list;
- Whether Defendant text messaged individuals who had registered their telephone numbers on the National Do Not Call Registry;

CLASS ACTION COMPLAINT
-8-

- Whether Defendant maintains the required policies and procedures under section 64.1200; and

- Whether Defendant is liable for damages, and the amount of such damages.

50. The common questions in this case are capable of having common answers, and Plaintiff and Class members will have identical claims capable of being efficiently adjudicated and administered in this case.

### TYPICALITY

51. Plaintiff's claims are typical of the claims of Class members, as they are all based on the same factual and legal theories.

### PROTECTING THE INTERESTS OF THE CLASS MEMBERS

52. Plaintiff is a representative who will fully and adequately assert and protect the interests of the Classes, and has retained competent counsel. Accordingly, Plaintiff is an adequate representative and will fairly and adequately protect the interests of the Class.

### PROCEEDING VIA CLASS ACTION IS SUPERIOR AND ADVISABLE

53. A class action is superior to all other available methods for the fair and efficient adjudication of this lawsuit, because individual litigation of the claims of all members of the Classes is economically unfeasible and procedurally impracticable. While the aggregate damages sustained by the Classes are in the millions of dollars, the individual damages incurred by each member of the Classes resulting from Defendant's wrongful conduct are too small to warrant the expense of individual lawsuits. The likelihood of individual Class members prosecuting their own separate claims is remote, and, even if every member of the Classes could afford individual litigation, the court system would be unduly burdened by individual litigation of such cases.

54. The prosecution of separate actions by members of the Classes would create a risk of establishing inconsistent rulings and/or incompatible standards of conduct for Defendant. For example, one court might enjoin Defendant from performing the challenged acts, whereas another

may not. Additionally, individual actions may be dispositive of the interests of the Class, although certain class members are not parties to such actions.

**COUNT I**
**VIOLATION OF 47 U.S.C. § 227(c) and 47 C.F.R. § 64.1200(d)**
**(On Behalf of Plaintiff and the IDNC Class)**

55. Plaintiff re-alleges and incorporates the foregoing allegations as if fully set forth herein.

56. In pertinent part, 47 C.F.R. § 64.1200(d) provides:

> No person or entity shall initiate any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive telemarketing calls made by or on behalf of that person or entity. The procedures instituted must meet the following minimum standards:
>
> (1) *Written policy*. Persons or entities making calls for telemarketing purposes must have a written policy, available upon demand, for maintaining a do-not-call list.
>
> (2) *Training of personnel engaged in telemarketing*. Personnel engaged in any aspect of telemarketing must be informed and trained in the existence and use of the do-not-call list.
>
> (3) *Recording, disclosure of do-not-call requests.* If a person or entity making a call for telemarketing purposes (or on whose behalf such a call is made) receives a request from a residential telephone subscriber not to receive calls from that person or entity, the person or entity must record the request and place the subscriber's name, if provided, and telephone number on the do-not-call list at the time the request is made. Persons or entities making calls for telemarketing purposes (or on whose behalf such calls are made) must honor a residential subscriber's do-not-call request within a reasonable time from the date such request is made. This period may not exceed thirty days from the date of such request. If such requests are recorded or maintained by a party other than the person or entity on whose behalf the telemarketing call is made, the person or entity on whose behalf the

telemarketing call is made will be liable for any failures to honor the do-not-call request. A person or entity making a call for telemarketing purposes must obtain a consumer's prior express permission to share or forward the consumer's request not to be called to a party other than the person or entity on whose behalf a telemarketing call is made or an affiliated entity.

57. Under 47 C.F.R § 64.1200(e), the rules set forth in 47 C.F.R. § 64.1200(d) are applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers.

58. Plaintiff and IDNC Class Members are residential telephone subscribers who received more than one text message made for purposes of telemarketing or solicitation purposes from Defendant, who has failed to implement the requisite procedures and personnel training as demonstrated by its repeated failure to honor opt-out requests.

59. Plaintiff and IDNC Class members made requests to Defendant not to receive texts from Defendant.

60. Plaintiff and IDNC Class Members revoked any consent they may have previously provided Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

61. Plaintiff and IDNC Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages. *See* 47 C.F.R. § 64.1200(f)(5)(i). (A consumer's "seller-specific do-not-call request * * * terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller.")

62. Plaintiff and IDNC Class Members revoked any consent they may have provided Defendant by responding with "stop" or similar opt-out instructions.

63. Defendant continued to text message Plaintiff and IDNC Class Members to harass them into making purchases from Defendant.

64. Defendant failed to honor Plaintiff's and IDNC Class members' opt-out requests.

CLASS ACTION COMPLAINT
-11-

65. Defendant's refusal to honor opt-out requests is indicative of Defendant's failure to implement a written policy for maintaining a do-not-call list and to train its personnel engaged in telemarketing on the existence and use of the do-not-call-list.

66. Plaintiff and IDNC Class members are informed and believe that Defendant has not instituted procedures for maintaining a list of persons who request not to receive telemarketing calls or text messages.

67. Plaintiff and IDNC Class members are informed and believe that Defendant does not have a written policy, available upon demand, for maintaining a do-not-call list.

68. Plaintiff and IDNC Class members are informed and believe that Defendant does not train its personnel engaged in any aspect of telemarketing in the existence and use of the do-not-call list.

69. The details and specific facts regarding Defendant's failure to maintain the required policies and procedures, as well as personnel training, are solely within Defendant's knowledge and possession.

70. Defendant has violated 47 C.F.R. § 64.1200(d) by failing to honor opt-out requests, failing to maintain the required policies and procedures, and failing to train its personnel engaged in telemarketing.

71. Pursuant to section 227(c)(5) of the TCPA, Plaintiff and IDNC Class members are entitled to an award of $500.00 in statutory damages, for each and every negligent violation.

72. As a result of Defendant's knowing or willful conduct, Plaintiff and IDNC Class members are entitled to an award of $1,500.00 in statutory damages per violation.

**COUNT II**
**Violations of 47 U.S.C. § 227(c) and 64.1200(c)**
**(On Behalf of Plaintiff and the DNC Class)**

73. Plaintiff re-alleges and incorporates the allegations set forth in the foregoing paragraphs as if fully set forth herein.

74. The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides in pertinent part that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential

telephone subscriber who has registered his or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

75. Per 47 C.F.R. § 64.1200(e), § 64.1200(c) is "applicable to any person or entity making telephone solicitations or telemarketing calls to wireless telephone numbers."

76. Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 U.S.C. § 227(c).

77. Plaintiff and DNC Class Members revoked any consent they may have previously provided Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages.

78. Plaintiff and DNC Class Members terminated any business relationship they may have previously had with Defendant by replying with a "stop" or similar opt-out instruction in response to Defendant's text messages. *See* 47 C.F.R. § 64.1200(f)(5)(i). (A consumer's "seller-specific do-not-call request * * * terminates an established business relationship for purposes of telemarketing and telephone solicitation even if the subscriber continues to do business with the seller.")

79. Defendant violated 47 C.F.R. § 64.1200(c) by initiating telephone solicitations to telephone subscribers such as Plaintiff and DNC Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

80. Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and DNC Class members received more than one text message in a 12-month period from Defendant in violation of 47 C.F.R. § 64.1200.

CLASS ACTION COMPLAINT
-13-

81. As a result of Defendant's conduct as alleged herein, Plaintiff and DNC Class members suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200. To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the DNC Class

**PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff, individually and on behalf of the Classes, prays for the following relief:

a) An order certifying this case as a class action on behalf of the Classes as defined above, and appointing Plaintiff as the representative of the Classes and Plaintiff's counsel as Class Counsel;

b) An award of statutory damages for Plaintiff and each member of the Classes as applicable under the TCPA;

c) An order declaring that Defendant's actions, as set out above, violate the TCPA;

d) An injunction requiring Defendant to comply with 47 C.F.R. § 64.1200(d) by (1) maintaining the required written policies; (2) providing training to their personnel engaged in telemarketing; and (3) maintaining a do-not-call list

e) Such further and other relief as the Court deems necessary.

**PLAINTIFF**, individually and on behalf of all others similarly situated,

DATED this 5th day of February, 2025.

By: */s/ Dana Oliver*

Anthony I. Paronich, *Subject to Pro Hac Vice*
anthony@paronichlaw.com
PARONICH LAW, P.C.
350 Lincoln Street, Suite 2400
Hingham, Massachusetts 02043
Telephone: (617) 738-7080
Facsimile: (617) 830-0327

*Attorney for Plaintiff and the putative Class*

CLASS ACTION COMPLAINT
-15-

# EXHIBIT A

















